Aaron N. Thompson
MAY, RAMMELL & THOMPSON, CHTD.
216 W. Whitman
P.O. Box 370
Pocatello, Idaho 83204-0370
Telephone: 208-233-0132
Facsimile: 208-234-2961
Idaho State Bar No.: 6235

## UNITED STATE DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DAVID M. EVANS, an individual; RON PICKENS, an individual, d/b/a P & D CONSTRUCTION, an Idaho sole proprietorship; SAGE CONSTRUCTION, LP, an Idaho limited partnership; <br><br> Plaintiff, <br><br> vs. <br><br> SHOSHONE-BANNOCK LAND USE POLICY COMMISSION; NATHAN SMALL, as Chairman of the Fort Hall Business Council; GLENN FISHER, as a member of the Fort Hall Business Council; LEE JUAN TYLER, as a member of the Fort Hall Business Council; DEVON BOYER, as a member of the Fort Hall Business Council; TINO BATT, as a member of the Fort Hall Business Council; BLAINE EDMO, as a member of the Fort Hall Business Council; DARRELL DIXEY, as a member of the Fort Hall Business Council; TONY GALLOWAY, SR., as Chairman of The Shoshone-Bannock Land Use Policy Commission; CASPER APPENAY, as a member of the Shoshone-Bannock Land Use Policy Commission; JOHN FRED, as a member of the Shoshone-Bannock Land Use Policy Commission; ARNOLD APPENAY, as a member of the Shoshone-Bannock Land Use | CASE NO.  12-CV-417-BLW <br><br> PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION |

Policy Commission; and GEORGE
GUARDIPEE, as a enforcement official of the
Shoshone-Bannock Land Use Policy
Commission; TRIBAL JUDGES JOHN DOES,
as a Tribal Judicial officer(s),

Defendants.

## INTRODUCTION

Plaintiffs David Evans, Ron Pickens d/b/a P&D Construction, and Sage Builders, LP, having filed their complaint in this matter for a permanent injunction and other equitable relief, hereby move this Court for a preliminary injunction. A proposed order has been filed concurrently. In support of its motion, Plaintiffs state that the Defendants have engaged in and are likely to continue to engage in prosecution of a civil lawsuit against them in the Shoshone-Bannock Tribal Court, in violation of the limits on the jurisdiction of the Shoshone-Bannock Tribes ("Tribes") over Plaintiffs, who are all non-members of the Tribes.

Plaintiffs are not subject to the Tribes' jurisdiction. The Shoshone-Bannock Tribal Court is conducting legal proceedings against Plaintiffs despite the lack of jurisdiction over them. If Defendants are not immediately halted in their efforts, Plaintiffs will be forced to defend themselves in a venue that lacks jurisdiction, incurring litigation costs, stress, invasion of privacy, and the risk of a fines, fees and/or a monetary judgment that, if seized or paid, cannot be recovered due to the Tribes' sovereign immunity. This Court should grant Plaintiffs preliminary injunctive relief to remain in effect until this case can be heard on the merits.

## FACTUAL BACKGROUND

### A. The Parties

Plaintiff David M. Evans is an individual who is a citizen and resident of Idaho. *See* Affidavit of Dave Evans, ¶2 (hereinafter "Evans Affidavit"). Mr. Evans owns land at 1832

Government Road, Pocatello, ID 83204 (the "Property"), which is fee land located within the boundaries of the Fort Hall Reservation. *Id.* Mr. Evans is not a member of the Tribes. Evans Affidavit, ¶5. Mr. Evans inherited the Property from his late father, Daniel Evans. Evans Affidavit, ¶2. Power County records dating from 1977 to present show no Tribal member has owned the Property during that time and that Mr. Evans and his late father acquired the Property in 1983. *See* Affidavit of Christine Steinlicht, ¶3 and attachments.

Throughout 2012, Mr. Evans has been constructing a single family residence on the Property. Evans Affidavit, ¶4. Mr. Evans obtained from Power County a building permit authorizing construction on the Property. *Id.* Mr. Evans contracted with Plaintiff Sage Builders, LP, a general contractor, to construct a single family residence on the Property. Affidavit of Sage Builders, ¶3. Sage Builders is not a Tribal or Tribal-member owned business. Affdavit of Sage Builders, ¶2.

Plaintiff Sage Builders, LP engaged subcontractors to provide materials and services for construction of Mr. Evans' residence on the Property. Affidavit of Sage Builders, ¶4. Plaintiff Ron Pickens d/b/a P&D Construction is a subcontractor that has performed work pouring concrete foundations for the single family residence on the Property. *Id.*at ¶5; Affidavit of Ron Pickens, ¶2.

The Shoshone-Bannock Land Use Policy Commission ("LUPC") is a political subdivision of the Shoshone-Bannock Tribes and is empowered to administer the Tribes' Land Use Policy Ordinance ("LUPO"). The LUPC has adopted implementing regulations, known as the LUPO Guidelines, on behalf of the Tribes. Defendant Tony Galloway, Sr. is the Chairman and a member of the LUPC, and is a citizen and resident of the State of Idaho. Defendants Casper Appenay and John Fred are members of the LUPC, and are citizens and residents of the

State of Idaho. Defendant George Guardipee is an enforcement official for the LUPC, and is a citizen and resident of the State of Idaho. Defendants Tony Galloway, Casper Appenay, John Fred, and George Guardipee (collectively the "LUPC Defendants") are being sued in their capacities as members, officers, and representatives of the LUPC. The LUPC Defendants' actions exceed their authority under federal law and, therefore, those Defendants are not cloaked with any immunity from suit that may apply to the Tribes. Judge John Doe(s) refers to the judicial officer(s) appointed to assert jurisdiction over Plaintiffs.

Defendant Nathan Small is the Chairman and a member of the Fort Hall Business Council and a citizen and resident of the State of Idaho. Defendants Glenn Fisher, Lee Juan Tyler, Devon Boyer, Tino Batt, Blaine Edmo and Darrell Dixey are members of the Fort Hall Business Council and citizens and residents of the State of Idaho. Defendant Nathan Small, Glenn Fisher, Lee Juan Tyler, Devon Boyer, Tino Batt, Blaine Edmo and Darrell Dixey (collectively the "Business Council Defendants") are being sued in their capacities as members of the Fort Hall Business Council. The Business Council Defendants' actions exceed their authority under federal law and, therefore, those Defendants are not cloaked with any immunity from suit that may apply to the Tribes. The LUPC, the Business Council Defendants, the LUPC Defendants, and Tribal Judge(s) are hereinafter collectively referred to as the "Tribal Defendants."

### B. Factual Background Regarding Tribal Defendants' Unlawful Attempts to Regulate Residential Construction on Mr. Evans' Fee Simple Property.

On or about April 13, 2012, Defendant George Guardipee, who described himself as the Building Inspector for the Shoshone-Bannock Tribes, e-mailed to Mr. Evans a copy of the Tribes' business permit application form, requesting that Mr. Evans complete and submit a permit application, pay an invoice for permit fees, and ensure that all contractors and

subcontractors obtain business licenses and pay other fees to the Tribes. Evans Affidavit, ¶6. Mr. Evans declined to apply for a Tribal building permit, because he had already obtained a Power County building permit. Evans Affidavit, ¶7. Power County issues permits to non-Indian property owners residing within the portions of Power County that are also located within the exterior boundaries of the Fort Hall Reservation. Affidavit of Bob Steinlicht, ¶3. Power County has adopted the International Building Code to provide uniform building standards that apply to all construction projects in Power County. *Id.*

On or about May 16, 2012, Mr. Guardipee and another Tribal official arrived in an SUV to the Property. Pickens Affidavit, ¶4. Mr. Guardipee proceeded to demand that Plaintiff Ron Pickens and his crew of workers cease work on the Property. *Id. See also* Affidavit of Cody Clark; Affidavit of Lee Wilson. Mr. Clark and Mr. Wilson are employees of P&D Construction who were attempting to pour concrete when Mr. Guardipee interfered. Mr. Guardipee was verbally hostile and threatened to call the U.S. Marshal to have Mr. Pickens and his crew arrested. *Id.* He said that they would be placed in the federal penitentiary for violations of Tribal law for their failure to obtain a building permit. *Id.* Not wanting to cause a confrontation or risk arrest, Mr. Pickens and his workers left the Property. *Id.* Plaintiffs stopped work temporarily in response to the disruption caused by Defendants' actions and this disruption resulted in a loss of one day of work time and approximately $5,000, the value of one day's work. Pickens Affidavit, ¶5. The next day Mr. Pickens and his crew returned to the Property to continue their work. *Id.*

On or about May 17, 2012, after business hours, the Tribal Defendants caused to be posted a "Stop Work" notice on the Property demanding that construction cease. Evans Affidavit, ¶8. The Tribal Defendants also caused to be served via U.S. Mail, a Tribal Notice of Violation/Cease and Desist Order to Mr. Evans. Evans Affidavit, ¶9 The Defendant Tony

Galloway, Chairman of the LUPC, subsequently Mr. Evans phoned Mr. Galloway (as he was instructed to do) and was informed they (the LUPC) would fine him $500 per day for ignoring their stop work order. Evans Affidavit, ¶10. On the phone, with Mr. Galloway, were two members of the Fort Hall Business Council, and Mr. Guardipee, the Building Inspector. *Id.* They requested that Mr. Evans consent to Tribal jurisdiction. Mr. Evans declined to do so, and he requested that the Tribal Defendants refrain from trespassing on his private property. *Id.*

In light of Mr. Evans' refusal to obtain a Tribal building permit, the LUPC commenced litigation against Mr. Evans and his contractors and subcontractors in Shoshone-Bannock Tribal Court. In July 2012, the LUPC mailed to Mr. Evans copies of a Summons and Complaint dated June 14, 2012 that named the following persons and entities as defendants: "Daniel and R. Evans; P&D Construction; David Bott; and Water Master Plumbing." Evans Affidavit, ¶11. The Complaint was filed in the Shoshone-Bannock Tribal Court, and alleged violations of the LUPO, the LUPO Guidelines, and the Tribes' Business License Act.

In July 2012, the LUPC caused discovery requests to be served via U.S. Mail to Mr. Evans, and P&D Construction. Evans Affidavit, ¶12. Pursuant to the Tribes' Law and Order Code, responses to discovery requests were due twenty days after service. *Id.* Among other things, the discovery requests sought copies of all of the recipients' deeds to the Property, three years of tax returns, and all correspondence with county and Tribal governments regarding construction on the Property and a list of all subcontractors used. *Id.* The LUPC also served requests for admission seeking admissions that the recipients engaged in a consensual relationship with the Tribes, their activities had a direct impact on the political integrity, economic security, and health and welfare of the Tribes and Fort Hall Reservation residents, and

that their construction of a building on the Fort Hall Reservation without a Tribal permit was a violation of Tribal law. *Id.*

On August 14, 2012, after Mr. Evans had filed his Complaint in Federal Court, the LUPC filed an amended Summons and Complaint that substituted "David Evans" for "Daniel and R. Evans" and alleged claims against Ron Pickens d/b/a P&D Construction. Evans Affidavit, ¶13 The initial Complaint identified P&D incorrectly as an Idaho corporation. *Id.* The LUPC's Amended Complaint also dropped David Bott and Water Master Plumbing from the lawsuit. *Id.* Thus, the Plaintiffs are now all facing suit in the Shoshone-Bannock Tribal Court.

The Tribal Defendants have made threats against Plaintiffs regarding their alleged non-compliance with Tribal laws. Directly and through their agents, the Tribal Defendants have threatened Plaintiffs with immediate arrest and incarceration by the US Marshals, imposition of fees and fines, and other legal and punitive consequences for refusing to obtain Tribal permits. Pickens Affidavit, ¶4; Wilson Affidavit, ¶4; Clark Affidavit, ¶4. Defendant George Guardipee specifically made threats to have Plaintiff Ron Pickens and his crew arrested and imprisoned in the federal penitentiary. *Id.* Plaintiffs have felt threatened, harassed, intimidated, and coerced by Defendants' actions. Defendants have unlawfully interfered with the construction project underway on the Property and caused Plaintiffs unnecessary delay, stress, and monetary harm. Affidavit of Sage Builders, ¶5. The estimated amount of monetary losses is approximately $17,000, which is based upon the loss of 17 full days of work on the project. Affidavit of Sage Builders, ¶7. Sage Builders, LP also lost other business it was planning on doing, but could not do, as a result of the delays caused by the Tribes. *Id.*

The lawsuit against Plaintiffs continues in Tribal Court despite the Tribal Court's lack of jurisdiction. Plaintiffs filed this lawsuit in District Court on August 10, 2012. Evans Affidavit,

¶13. On August 14, 2012, the Tribal Court, upon information and belief, conducted a status conference in this case. After Plaintiffs served the Summons and Complaint in this matter on the Tribal Defendants, the Tribal Defendants responded with a motion to dismiss, claiming that the question of the Tribes' jurisdiction over Plaintiffs should be decided in the first instance in Tribal Court. *See* Motion to Dismiss, Docket Nos. 20 and 23.   The Defendants filed two separate motions, one on behalf of the LUPC and the LUPC Defendants, and second on behalf of the Business Council Defendants.  The second motion merely adopts and incorporates by reference the arguments of the first motion.

Plaintiffs now seek injunctive relief in this Court to halt the Tribal Defendants' unlawful actions in attempting to enforce Tribal ordinances over them, as non-Tribal members, who have done nothing more than engage in construction of a single family residence on fee land in an open area of the Fort Hall Reservation.

## STANDARD FOR GRANTING THE MOTION

A preliminary injunction is warranted pending the outcome of this matter in order to preserve the status quo and to prevent further irreparable harm to the Plaintiffs.  The purpose of a preliminary injunction "is merely to preserve the relative position of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

In determining whether to grant a preliminary injunction, the court must consider and balance four factors:  (1) whether the movant has a substantial likelihood of success on the merits; (2) whether "the movant will suffer irreparable harm unless the injunction issues"; (3) whether "the threatened injury to the movant outweighs any harm the proposed injunction may cause the opposing party"; and (4) whether the public interest will be served by an injunction. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

## ARGUMENT

**A. This Court has Jurisdiction to Consider a Challenge to the Tribes' Jurisdiction.**

At the heart of this lawsuit is the Tribes' legal authority to assert civil regulatory and adjudicatory jurisdiction over non-members on fee land within the Fort Hall Reservation. This Court should issue a preliminary injunction to halt the Tribal Court proceedings, because the Tribes lack jurisdiction over Plaintiffs and irreparable harm will result if the Tribal Court proceedings continue pending final resolution of this lawsuit.

This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, which provides federal question jurisdiction. The issue of an Indian tribe's jurisdiction over a non-member is a federal question. *Nat'l Farmers Union Ins. Co. v. Crow Tribe of* Indians, 471 U.S. 845, 852 (1985) ("The question whether an Indian tribe retains the power to compel a non-Indian property owner to submit to the civil jurisdiction of a tribal court is one that must be answered by reference to federal law and is a 'federal question' under §1331.") Temporary injunctive relief is proper pending until this matter can be heard on the merits. *See e.g., Crowe & Dunlevy, P.C. v. Stidham*, 609 F.Supp.2d 1211, 1222 (N.D. Okla. 2009), *aff'd* 640 F.3d 1140 (10th Cir. 2011) (granting preliminary injunction based upon "significant risk that [plaintiff] will be forced to expend unnecessary time, money, and effort litigating the issue of their fees in the Muscogee Nation District Court – a court which likely does not have jurisdiction over it"). *Id.*

**B. A Preliminary Injunction is Proper Because There is a Strong Likelihood of Success on the Merits.**

As a general rule, Indian tribes lack civil authority over the conduct of non-members on non-Indian fee land within a reservation, and, unless the Tribes can demonstrate that one of two limited exceptions apply, Plaintiffs are not subject to civil tribal authority pursuant to *Montana v. United States*, 450 U.S. 544 (1981) ("*Montana* exceptions").

Among the areas in which tribes have been divested of sovereignty are ". . .those involving the relations between an Indian tribe and non-members of the tribe. . . ." *Montana*, 450 U.S. at 564 (quoting *United States v. Wheeler*, 435 U.S. 313, 326 (1978)). That divestiture rests upon the ". . .fact that the dependent status of Indian tribes within our territorial jurisdiction is necessarily inconsistent with their freedom independently to determine their external relations." *Id. See also Atkinson Trading Co. v. Shirley*, 532 U.S. 645, 659 (2001) ("Indian tribes are 'unique aggregations possessing attributes of sovereignty over both their members and their territory,' but their independent status generally precludes extension of tribal civil authority beyond these limits."). The Supreme Court's decisions thus reflect that "instead of presuming that tribal power exists and searching for statutes or treaties to negate that presumption, the Supreme Court presumes that tribal power does not exist unless Congress has said otherwise." *Reservation Telephone Coop v. Henry*, 278 F. Supp. 2d 1015, 1020-21 (D.N.D. 2003).

*Montana* is the "pathmarking" case on tribal jurisdiction. The *Montana* exceptions are:

> A tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationship with the tribe or its members, through commercial dealing, contracts, leases or other arrangements. A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.

*Montana*, 450 U.S. at 565-66.  On recent occasions the U.S. Supreme Court has interpreted the

*Montana* exceptions ***narrowly***, stating:

> Given *Montana*'s "general proposition that the inherent sovereign powers of an Indian
> tribe do not extend to the activities of nonmembers of the tribe," efforts by a tribe to
> regulate nonmembers, especially on non-Indian fee land, are "presumptively invalid."
> The burden rests on the tribe to establish one of the exceptions to Montana's general rule
> that would allow an extension of tribal authority to regulate nonmembers on non-Indian
> fee land. These exceptions are "limited" ones, and cannot be construed in a manner that
> would "swallow the rule," or "severely shrink" it.

*Plains Commerce Bank v. Long Family Land and Cattle Company, Inc.*, 554 U.S. 316, 330

(2008) (citations omitted).

Neither of the two *Montana* exceptions is present here.  Under applicable federal law,

unless one of the *Montana* exceptions is present, the inherent sovereign powers of an Indian tribe

do not extend to the activities of non-members of the tribe.  The rule is "particularly strong"

when the nonmember's activity takes place on land owned in fee simple.  *Plains Commerce

Bank, 554 U.S.* 328.  The U.S. Supreme Court's general rule against tribal authority over non-

Indian owned fee land applies to the Property within the boundaries of the Fort Hall Reservation

and under the circumstances presented here.

### a.  There is No Consensual Relationship

The Tribal Defendants have appeared in this action through two separately filed motions

to dismiss.  Those motions allege that these cases cannot be heard because tribal remedies have

not been exhausted.  Docket Nos. 20 and 23.  They also assert that there exists a "colorable"

claim that there is tribal jurisdiction under the second *Montana* exception. *Id.* The Tribal

Defendants do not allege that there is a consensual relationship between any of the Plaintiffs and

the Tribes, or any Tribal member.  The Tribal Defendants claim that the Tribes possess

jurisdiction over Plaintiffs based solely upon the second *Montana* exception.  Accordingly,

Plaintiffs have a strong likelihood of success that there is no jurisdiction based upon consent to tribal jurisdiction.

### b. There is No Reason to Extend the "Health and Welfare" Exception to These Circumstances

The second *Montana* exception applies only when the Indian tribe shows that it must assert regulatory authority over non-member conduct in order to avoid a "***catastrophic***" impact to Tribal health and/or welfare. *Plains Commerce Bank*, 554 U.S. at 341. Under the circumstances presented here, exhaustion of tribal remedies is not required and this Court should grant Plaintiffs' motion for injunctive relief.

The Tribal Defendants have contended, in their motions to dismiss, that the second *Montana* exception applies whenever any use of fee land has *some* adverse effect on the tribe. But the law does not contemplate such a broad reading of *Montana*. Instead, the second exception only applies when the nonmember's impact is "demonstrably serious." *Burlington Northern R. Co. v. Red Wolf*, 196 F.3d 1059, 1064 (9th Cir. 1999). A tribes' "bare interest in the safety of its members cannot satisfy the second exception." *Id. citing County of Lewis v. Allen*, 163 F.3d 509, 515 (9th Cir. 1998). "To invoke the second Montana exception, the impact must be 'demonstrably serious and must imperil the political integrity, the economic security, or the health and welfare of the Tribe.'" *Wilson v. Marchington*, 127 F.3d 805, 815 (9th Cir.1997) (quoting *Brendale v. Confederated Tribes & Bands of the Yakima Indian Nation*, 492 U.S. 408, 431, (1989)).

More recently, the U.S. Supreme Court has said that the second exception is not triggered for conduct that merely "injure[s]" the tribe—the second exception authorizes civil jurisdiction only if the non-Indians' conduct "imperil[s] the subsistence of the tribal community." *Plains Commerce Bank*, 554 U.S. at 339 (2008).

Construction of a single family residence falls far short of the "demonstrably serious" impact that the Tribal Defendants must show to justify their claim of jurisdiction. To the extent the Tribal Defendants argue that exercise of regulatory jurisdiction is warranted under the second *Montana* exception, then their claims fail under the standards set forth in *Montana* and its progeny. If mere construction of a house were sufficient to invoke the second *Montana* exception, then the exception would "swallow the rule," and any potential impact to the Reservation landscape, no matter how minute, would form a basis for tribal jurisdiction. The presumption *against* tribal jurisdiction would be turned on its head in favor of finding jurisdiction in every instance where human activity could potentially impact the Reservation environment. Just as injury to a tribal member resulting from an automobile accident was insufficient to demonstrate tribal jurisdiction in *Wilson*, there is no basis here for the Tribes' assertion of jurisdiction. The Tribal Defendants have no evidence that their assertion of jurisdiction over Mr. Evans' construction of a single family home is necessary to avoid a "catastrophic" impact to the Reservation or Tribal government.

### c. The Evans Residence is in an "Open" Area of the Reservation

As a result of divestiture from Tribal ownership, certain "open" areas of Indian reservations that are predominantly owned and populated by nonmembers have lost their character as an exclusive tribal resource, and have become, as a practical matter, an integrated portion of the county. *See Brendale v. Confederated Tribes and Bands of Yakima Indian Nation,* 492 U.S. 408, 447 (1989). In those areas, there is no longer any substantial tribal interest in governing land use and the power to zone has become "outmoded." *Id.* The crucial inquiry is whether the tribal assertion of jurisdiction is essential to preserve "the right of reservation

Indians to make their own laws and be ruled by them." *Strate v. A-1 Contractors*, 520 U.S. 438, 457 (1997) (quoting *Williams v. Lee*, 358 U.S. 217, 220 (1959)).

The relevant facts in the inquiry regarding the potential "harm" to the Tribes from Mr. Evans' residential construction project are as follows:

David Evans owns the Property in fee simple. Evans Affidavit, ¶2.   He inherited it from his father. *Id.* The deeds for the Property are recorded with Power County and he pays taxes to Power County.

The area surrounding the Property is predominantly agricultural and residential land with little to no Indian population. Affidavit of Douglas Glascock, ¶6-8. Also adjacent to the Property is the Pocatello Airport, which is owned in fee by the City of Pocatello. *Id.* According to the Power County Tax Assessor, all neighboring parcels in the immediate vicinity are non-member owned. *Id.* at ¶8.

The Tribes provide no utility or community services to the Property.  Evans Affidavit, ¶14. Those services are received exclusively from state, local, and other entities, such as the Southeastern Health District (septic permits), Idaho Power (electrical hookup), Power County Sheriff (local safety), and others.  *Id.*   Mr. Evans' house is located on Government Road. Government Road is a County-maintained road.  Affidavit of Donald R. Hoskins, ¶ 2-3.  Neither the BIA nor the Tribes' Transportation Department provides any maintenance service to Government Road. *Id.*

The above-described facts are precisely the sort that the *Brendale* court relied upon in concluding that the Yakama Nation did not have "substantial interest in governing land use" in the open are of the Reservation and deemed the power to zone that area "outmoded." *Brendale*, 492 U.S. 447.  The Court stated,

The Tribe cannot complain that the nonmember seeks to bring a pig into the parlor, for, unlike the closed area, the Tribe no longer possesses the power to determine the basic character of the area. Moreover, it is unlikely that Congress intended to give the Tribe the power to determine the character of an area that is predominantly owned and populated by nonmembers, who represent 80 percent of the population yet lack a voice in tribal governance.

*Brendale*, 492 U.S. at 446-47.

It is plain that the Evans Property is in the open area of the Fort Hall Reservation that receives County services, is predominantly occupied and owned by non-Tribal members, and is no longer an "exclusive tribal resource" that has become "as a practical matter, an integrated part of the county." *Id.*

It is also plain that Mr. Evans' construction of a single family residence on fee land poses no threat to the right of the Shoshone-Bannock Tribes to make their own laws and be ruled by them. Mr. Evans is not a Tribal member. His house is not located on Tribal land. Issuance of a county building permit does not infringe upon the right of "reservation Indians to make their own laws and be ruled by them" because his actions have no direct or indirect impact on the Shoshone-Bannock Tribes or its governance of its members. If there is some threat to public safety from construction of Mr. Evans' house, it can be adequately addressed under applicable county codes and ordinances. State and county courts, and administrative remedies, exist for unlawful construction of a residence.

The area in the immediate vicinity of the Property is "open" as that term is defined in *Brendale, supra,* and thus, is subject to exclusive land use regulation by the local governing authorities. Consistent with that local authority, Plaintiff David Evans obtained, from Power County a building permit for his residential construction project on the Property. Evans Affidavit, ¶2. The Tribes' attempts to regulate activities on the Property are therefore presumptively invalid. There is no compelling reason for the Tribes to assert jurisdiction over

Mr. Evans and the Property in light of the extant civil regulatory authority of Power County and its subdivisions.  The Southeastern Health District is responsible for permitting and inspection the septic system and well.  Idaho Power provides electrical hookups.  Power County Highway District maintains the portion of Government Road inside Reservation boundaries where Mr. Evans' house is located.  Power County also maintains a public record of deeds and recorded instruments relating to the Property's title history.  In sum, Power County has a significant interest in possessing exclusive zoning authority over the Property, and conversely, the Tribes have little to no interest in regulating the Property.  Under *Brendale*, there is no basis for the Tribal Defendants' claim that they have exclusive zoning authority over the Evans Property.

In a recent state lawsuit related to an adjacent property, Power County successfully prosecuted a non-Indian land owner who proceeded to build a single family residence without obtaining a county building permit.  The Sixth Judicial District Court's decision in *State of Idaho v. Rodney Sortor*, State of Idaho Sixth Judicial District Court, Cause No. CR-00-00716 (2001), relied upon *Brendale* in ruling against the Tribes' assertion of jurisdiction over areas of the Fort Hall Reservation that in actuality are "open" and not primarily Tribal in character.  *See* Affidavit of Aaron Thompson, Exhibit A.  In *Sortor*, Power County asserted jurisdictional authority over Mr. Sortor's failure to obtain a building permit.  Mr. Sortor's defense was that he did not need to obtain a County permit, because he had already obtained a Tribal permit.  His property was non-Indian owned fee simple land in the Fort Hall Reservation.  The court rejected Mr. Sortor's defense and confirmed the permitting authority of Power County.  The state court expressly held that Mr. Sortor could not avoid prosecution under Power County's ordinance by "opting in" to the Tribes' land use regulatory program.  Thus, the Tribal Defendants' contention that Power

County lacks authority to regulate land use by non-Indians on the Fort Hall Reservation is baseless.

## C. Irreparable Harm Will Occur if a Preliminary Injunction Is Not Granted

The Tribal Defendants' actions exceed the authority that the Shoshone-Bannock Tribes are capable of exercising under federal law.  They have no jurisdiction over Plaintiffs and the Tribal Court action currently pending against them is facially void due to lack of subject matter jurisdiction.  A case of actual controversy exists between Plaintiffs and the Tribal Defendants concerning application to Plaintiffs of the LUPO, the LUPO Guidelines, and concerning the Tribes' claims of authority to enforce the foregoing in tribal administrative and judicial forums.

Plaintiffs David Evans, Ron Pickens d/b/a P&D Construction, and Sage Builders, LP have been sued in Tribal Court and have received notice to respond in Tribal Court.  They have also been served with discovery requests.  The written discovery requests seek numerous intrusive and irrelevant documents and information.  To defend themselves in Tribal Court, Plaintiffs will be required to incur litigation costs, invest substantial amounts of time and energy, and will undergo the stress and strain of full-blown litigation in a court that has no jurisdiction. If a judgment is entered against Plaintiffs for their failure to obtain a tribal permit, notwithstanding their valid county building permits, they will bear the stigma of having such a judgment entered.  Furthermore, if any payments are made to the Tribes, recovery of those amounts will be virtually impossible to recover back due to the fact that as a sovereign nation, the Tribes possess sovereign immunity from suit.  Where it is plain that requiring further proceedings in tribal court that has no plausible claim to jurisdiction will result in unnecessary expenditure of litigation resources and time, preliminary injunctive relief is appropriate. *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140 (10th Cir. 2011).  In *Crowe & Dunlevy, P.C.*, the

Tenth Circuit upheld issuance of a preliminary injunction where there was a "significant risk that Crowe [the plaintiff] would be forced to expend unnecessary time, money, and effort litigating the issue of their fees in the Muscogee Nation District Court—a court which likely does not have jurisdiction over it." *Id.* at 1157. Further, in light of the risk that a judgment in favor of the Tribe would leave Crowe without recourse to recoup fees improperly paid under a tribal court judgment, there was a "significant risk of financial injury which, given the unique circumstances of this case, creates an irreparable harm sufficient to support a preliminary injunction." *Id.* Money damages that cannot be later recovered for reasons of sovereign immunity are a form of irreparable injury. *Id. See also Wells Fargo Bank, N.A. v. Maynahonah*, 2011 WL 3876519 (W.D. Okla. 2011) (unpublished decision) (finding that plaintiff's expenditure of time, money, and resources likely could not be recouped later, even if plaintiff prevails on the merits of this case and that "without injunction Plaintiff stands to suffer both tangible and intangible losses that likely cannot be compensated with money damages").

Due to the irreversible, irreparable, and serious harm to Plaintiffs posed by the pending action against them in Tribal Court, Plaintiffs have no adequate or timely remedy at law for the above-mentioned conduct of the Tribal Defendants and this action for injunctive relief is Plaintiffs' only means for securing relief. Plaintiffs would be required to fully litigate this matter in Tribal Court which has no jurisdiction. They would be required to disclose substantial amounts of personal, confidential information in the course of those proceeding. Even in the early stages of litigation, the LUPC is seeking far reaching disclosures of personal confidential information, such as tax returns, which could be disseminated and made available to persons who have no right to such information. It is highly unlikely that the Tribal Court would provide adequate protections from the unwarranted invasion of privacy and harassment that Plaintiffs

would endure.  The LUPC has also made clear that it is seeking substantial monetary penalties, at least $500  per day, in any resulting judgment.  Evans Affidavit, ¶10.  An appeal to the Tribal Court of Appeals is likely.  Plaintiffs are entitled to injunctive relief enjoining the Tribal Defendants from pursuing further any of their claims against Plaintiffs in the Tribal Court in order to prevent the irreversible consequences of further proceedings in Tribal Court.

### D. The Threatened Injury to the Tribal Defendants from an Injunction is Minimal, and an Injunction is in the Public Interest.

The remaining factors of the test for a preliminary injunction under Fed.R.Civ.P. 65 are whether the threatened injury to the movant will outweigh the potential for harm to the enjoined party and whether an injunction is in the public interest.  These factors weigh heavily in favor of the Plaintiffs.  There is no colorable argument in favor of tribal jurisdiction over Plaintiffs, and there is minimal (at best) injury that will result from a Federal Court Order halting the proceedings against Plaintiffs in tribal court.  Tribal sovereignty is "a sovereignty outside the basic structure of the Constitution." *Plains Commerce Bank*, 554 U.S. at 336 (quoting *United States v. Lara*, 541 U.S. 193, 212 (2004)).  An injunction in favor of Plaintiffs to halt an unlawful proceeding in tribal court is in the public's interest.

### E. There is a Strong Likelihood of Success on the Merits and Exhaustion of Tribal Remedies is not Required

The Tribal Defendants argue in this case that despite the presumption against tribal jurisdiction, this Court should abstain from rendering a decision on the merits and require Plaintiffs to exhaust tribal remedies.  As a general rule, a district court should abstain from asserting federal jurisdiction over claims that are identical to claims pending in tribal court until the tribal court has had a full opportunity to consider the basis for its own jurisdiction.  *Strate*, 520 U.S. at 449-450; *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 15 (1987) (tribal exhaustion

doctrine implicates considerations of comity). Exhaustion of tribal remedies is not required however when tribal court jurisdiction does not exist and remand would only delay a final judgment. *Burlington Northern R. Co. v. Red Wolf*, 196 F.3d 1059, 1066 (9th Cir. 1999). The Ninth Circuit recently overturned a District Court decision that denied injunctive relief to a plaintiff that was sued in tribal court for trademark infringement. *Philip Morris USA, Inc. v. King Mountain Tobacco Company, Inc.*, 569 F.3d 932 (9th Cir. 2009). The Ninth Circuit held in the *King Mountain Tobacco Company* case that exhaustion of tribal remedies would serve no purpose beyond delay in light of the fact that the tribal court had "no colorable claim" to a dispute between a non-member and a tribal entity. *Id.* at 945.

A strong likelihood of success on the merits warrants an exercise of this court's equitable remedies in favor of an injunction because (1) the Tribal Defendants can present no set of facts that would justify their assertion of jurisdiction over Plaintiffs in Tribal Court; and (2) exhaustion of tribal remedies is not required because it is "plain" that no jurisdiction over Plaintiffs exists. Exhaustion of tribal remedies is only required when there is a colorable assertion of jurisdiction. This case does not present a situation where the Plaintiffs have entered into a consensual relationship with a tribe or tribal member and subsequently seeks to avoid tribal court jurisdiction. *See e.g. Dolgen Corp., Inc. v. the Mississippi Band of Choctaw Indians*, 2008 WL 5381906 (S.D. Miss. 2008) (declining to enjoin a tribal court action against a non-Indian who had failed to provide sufficient evidence that it did not consent to tribal jurisdiction). Nor does this case present a situation like in *Elliot v. White Mountain Apache Tribal Court*, 566 F.3d 842, 847 (9th Cir. 2009), which held that there was a "plausible" assertion of jurisdiction over a non-Indian who trespassed on Tribal lands and allegedly intentionally set a forest fire that destroyed millions of dollars worth of the tribe's natural resources. Therefore, the Ninth Circuit held that

tribal court jurisdiction was "plausible" and required the tribal court an opportunity to determine their jurisdiction in the first instance.

Instead, this case presents facts more similar to *Crowe & Dunlevy, P.C., supra*, which enjoined a tribal action against a non-member who had not consented to tribal jurisdiction and for whom further tribal proceedings would serve no purpose other than delay. *Crowe & Dunlevy, P.C.*, 640 F.3d at 1153. Neither Mr. Evans nor any of his contractors has consented to tribal jurisdiction. None of Mr. Evans' actions or those of the other Plaintiffs pose any threat to the economic security or political integrity to the Tribes. The Tribal Defendants do not even attempt to show, other than with blanket assertions, any tangible impacts to the Reservation environment that could potentially result from Mr. Evans' construction of a permitted single family residence. Accordingly, there is no plausible claim of tribal jurisdiction over Mr. Evans or the Property and further proceedings against Plaintiffs should be enjoined in Tribal Court.

## CONCLUSION

Plaintiffs respectfully request that this Court grant this request for a preliminary injunction. Plaintiffs have demonstrated a strong likelihood of success on the merits, irreparable harm in the event injunctive relief is denied, and that exhaustion of tribal remedies is not required. Plaintiffs will further address the Tribal Defendants' legal arguments rebutting their request for dismissal of this lawsuit in response to their separately filed motions to dismiss.

DATED this 5th day of October, 2012.

MAY, RAMMELL & THOMPSON, CHTD

By
Aaron N. Thompson, ISB No. 6235
*Attorney for Plaintiffs*