Aaron N. Thompson
MAY, RAMMELL & THOMPSON, CHTD.
216 W. Whitman
P.O. Box 370
Pocatello, Idaho 83204-0370
Telephone: 208-233-0132
Facsimile: 208-234-2961
Idaho State Bar No.: 6235

UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DAVID M. EVANS, an individual; RON PICKENS, an individual, d/b/a P & D CONSTRUCTION, an Idaho sole proprietorship; SAGE CONSTRUCTION, LP, an Idaho limited partnership;<br><br>Plaintiffs,<br><br>vs.<br><br>SHOSHONE-BANNOCK LAND USE POLICY COMMISSION; NATHAN SMALL, as Chairman of the Fort Hall Business Council; GLENN FISHER, as a member of the Fort Hall Business Council; LEE JUAN TYLER, as a member of the Fort Hall Business Council; DEVON BOYER, as a member of the Fort Hall Business Council; TINO BATT, as a member of the Fort Hall Business Council; BLAINE EDMO, as a member of the Fort Hall Business Council; DARRELL DIXEY, as a member of the Fort Hall Business Council; TONY GALLOWAY, SR., as Chairman of The Shoshone-Bannock Land Use Policy Commission; CASPER APPENAY, as a member of the Shoshone-Bannock Land Use Policy Commission; JOHN FRED, as a member of the Shoshone-Bannock Land Use Policy Commission; ARNOLD APPENAY, as a member of the Shoshone-Bannock Land Use | CASE NO.  12-CV-417-BLW<br><br>PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION |

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Policy Commission;  and GEORGE GUARDIPEE, as a enforcement official of the Shoshone-Bannock Land Use Policy Commission; TRIBAL JUDGES JOHN DOES, as a Tribal Judicial officer(s),

                Defendants.

Rather than address the facts of this case, the Defendants have resorted to fear-mongering to paint, with their own overly-broad brush, a picture of conjecture, baseless assertions, and outright falsehoods, all while ignoring basic U.S. Supreme Court precedent holding that exhaustion of tribal remedies is not required when it is "plain" that there is no basis for the tribe's claim of jurisdiction. Defendants have relied on a "shotgun" approach replete with proverbial red herrings to dissuade the court from addressing the real, and only relevant issue – jurisdiction.

In support of their Motion for Preliminary Injunction, the Plaintiffs presented ample affirmative and properly supported evidence regarding the underlying facts of this case. Plaintiffs also presented numerous cases supporting their argument that exhaustion of tribal remedies is not required in <u>this</u> case, because there is no factual basis for the Defendants' claim that jurisdiction is even plausible.

### A. Multiple Courts Have Held That Injunctive Relief is Appropriate to Avoid Needless Wasteful Litigation in Tribal Courts.

Defendants contend, falsely, that Plaintiffs seek to rush this Court into granting injunctive relief prematurely, before the Shoshone-Bannock Tribal Court of Appeals has had an opportunity to consider the case against Mr. Evans, Mr. Pickens, and Sage Construction, LP.  It is not correct to cast this case as whether it is a violation of federal law to demand exhaustion.  The correct

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

standard to apply is whether exhaustion of tribal remedies is required under the circumstances of this case.

None of Defendants' cited authority supports their claims that exhaustion is required. They state, without authority, that invoking the injunctive relief analysis under Rule 65 is not a way to "ignore" the exhaustion doctrine. To the contrary, multiple federal courts have granted injunctive relief against a Tribal official or agency when a litigant demonstrates a probable likelihood of success on the merits and irreparable harm such as litigating in a forum that has no jurisdiction. *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1153 (10th Cir. 2011). *See also Wells Fargo Bank, N.A. v. Maynahonah*, 2011 WL 3876519 (2011) (Case No. CV-11-648-D, Findings of Fact, Conclusions of Law, and Order dated Sept. 2, 2011) (granting preliminary injunction to prevent Plaintiff from expending resources and effort in litigation, where the Apache Gaming Commission likely lacked jurisdiction); *QEP Field Services Co. v. Ute Indian Tribeof the Uintah and Ouray Reservation*, 740 F.Supp.2d 1274 (D. Utah 2010) (granting preliminary injunction to enjoin Tribal Court's order entered without jurisdiction over the non-Indian property owner); *Otter Tail Power Co. v. Leech Lake Band of Ojibwe*, 2011 WL 2490820 (D. Minn.) (Case No. 11-1070 (DWF/LIB), Memorandum Opinion and Order dated June 22, 2011) (granting immediate preliminary injunction to preclude Tribe from asserting prescriptive and permitting jurisdiction over utility's power line project that did not cross tribally-owned or trust lands); *Koniag, Inc. v. Kanam*, 2012 WL 2012 WL 2576210 (Case No. 3:12–cv–00077–SLG) (Decision and Order Granting Preliminary Injunction dated July 3, 2012) (enjoining tribal court from proceeding with legal action against non-Indian defendants due to tribal court's lack of jurisdiction).

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Since 2001, the federal courts have expressly recognized under *Nevada v. Hicks*, 533 U.S. 333 (2001) that exhaustion is not required where it is plainly clear that exhaustion would serve no purpose other than delay. Thus, decisions pre-dating the *Nevada v. Hicks* case provide no guidance regarding the application of this exception to the exhaustion rule. Yet all the cases Defendant cite were either decided before *Nevada v. Hicks* or are clearly distinguishable.

For instance, Defendants cite *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 65-66 (1978), however that case involved a Tribal member's claim against her Tribe's disparate membership rules. They also cite *Siemon v. Stewart*, 2012 WL 5430977 (Nov. 7, 2012, D. Montana), however that case also involved a dispute between two tribal members and was dismissed so that tribal court remedies could be exhausted. *Burrell v. Armijo*, 456 F.3d 1159 (10th Cir. 2006) is similarly inapposite, as it involved a non-member's lease of Tribal lands – in other words an express contractual relationship between the Tribe and the non-member. Furthermore, the non-Indian plaintiff had failed to raise any argument in course of several years of litigation in federal and tribal courts that the tribal court lacked subject matter jurisdiction, on which the Tenth Circuit remarked,

> The Burrells never accepted the district court's invitation to challenge the tribal court's jurisdiction. On appeal, the Burrells still fail to construct a clear argument challenging the tribal court's jurisdiction over their claims. The only argument in the Burrells' filings before the district court or on appeal that could be construed as an objection to the tribal court's jurisdictional authority is their claim that the provisions of the BIA lease required arbitration of their damage claims before the Secretary of Interior.

*Id.* at 1168-69.

**B. Most Courts Requiring Exhaustion Have Done So Due to a Consensual Relationship; No Such Relationship Exists Here.**

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

The cases Defendants rely upon do not establish that exhaustion is required or that the Shoshone-Bannock Tribal Court likely has jurisdiction over Plaintiffs, who are all non-members of the Shoshone-Bannock Tribes.

As noted in Plaintiffs' initial Motion, there is no argument here that the first *Montana* exception applies, despite Defendants' attempt to present hypothetical questions that consensual relationships may exist. *See* Response at p. 14. Yet Defendants rely upon multiple cases where such a consensual relationship either existed or formed the basis of the parties' dispute. E.g. *FMC Corp. v. Shoshone-Bannock Tribes*, 905 F.2d 1311 (9th Cir. 1990) (Ninth Circuit affirmed tribal court's finding of jurisdiction based on first *Montana* exception, where FMC had "actively engaged in commerce" with the Tribes, including leases to mine phosphate ore on Tribal land). Thus, exhaustion of tribal remedies occurred because there was, at a minimum, a plausible argument that a non-Indian litigant had consented to tribal jurisdiction. Such was also the case in the *Bank of Oklahoma v. Muscogee (Creek) Nation*, 972 F.2d 1166 (10th Cir. 1992) (underlying dispute regarding control of funds arose from contract between Muscogee (Creek) Nation and non-Indian manager of tribal bingo hall). And a contract between a cable tv provider and a Tribal member also formed the basis for the district court's denial of injunctive relief in *Dish Network Service LLC v. Laducer*, 2012 WL 2782585 (D.N.D) (July 9, 2012, Case No. 4:12-cv-058), also cited by Defendants. In each of the aforementioned cases, some kind of consensual relationship existed that precluded reliance on the *Nevada v. Hicks* exception. On the issue of irreparable harm, however, in *Dish Network Service,* LLC, the district court found that this factor weighed in the plaintiff's favor due to the "irreparable harm if forced to expend time, effort, and money in a forum that lacks jurisdiction." *Id.* at p.3.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Defendants rely on two other contract-based cases in which no exhaustion issue was presented. The first is *Big Horn County Electric Cooperative, Inc. v. Adams*, 219 F.3d 944 (9th Cir. 2000), which never addressed the exhaustion doctrine; instead it decided the issue of the tribe's regulatory authority over rights-of-way on lands owned by Tribal members, with whom the plaintiff had a contractual relationship. The Ninth Circuit concluded that neither *Montana* exception applied, reasoning that there was insufficient nexus between the contracts at issue and the regulatory tax the tribe sought to impose, and there was no tribal jurisdiction. *Id.* In addition to being inapposite on whether exhaustion is required under the facts presented here, *Big Horn* demonstrates precisely the kind of irreparable harm that the Evans plaintiffs face here – inability to collect any funds expended (such as attorneys fees) or paid during the court of tribal court proceedings, even if they prevail in federal court. On this point, Defendants are just flat out wrong when they state that "procedures are available for Plaintiffs to recover litigation fees and costs." Response at 21. Defendants also rely on *Cheromiah v. United States*, 55 F.Supp.2d 1295 (D.N.M. 1999), however that is also inapposite because it found a consensual relationship existed between the Indian tribe and the United States in the form of a lease pursuant to which the federal government operated a hospital for tribal members. *Id.* at 1304. The court also found that the second *Montana* exception was met due to the "unique situation" involving the federal government's role as the sole provider of western medical care for tribal members on the reservation. Thus, alleged medical malpractice at the facility had a "direct and substantial impact on the health and welfare of the Tribe, more than would a simple isolated tort between individuals." *Id.* at 1311. In sum, where a consensual relationship exists, the exceptions to the exhaustion requirement are not applicable. These cases have no bearing on whether exhaustion

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

is required here, however, where Defendants make no argument that a consensual relationship exists.

### C. Defendants Misrepresent the Tribal Court Proceedings.

Defendants incorrectly describe the proceedings in Tribal Court. They state that in response to the Tribal Court's *sua sponte* notice of default judgment hearing, they requested a stay. In fact, the LUPC's attorneys requested an immediate trial setting in response to the Tribal Court's notice. Affidavit of Aaron Thompson, Ex. B. It was only after Plaintiffs made a limited appearance, through counsel, that the LUPC requested a limited stay for purpose of allowing the pending federal court motions to be heard. Thompson Affidavit, Ex. C. Based upon the LUPC's initial demand for a trial date, the Tribal Court proceedings will certainly resume unless this Court grants Plaintiffs' request for injunctive relief. Plaintiffs seek relief not from the allegedly "stayed" Tribal Court litigation, but rather from the very real stress, invasion of privacy, cost (including lost wages and time away from work) and burden of litigation that will surely resume if this Court denies injunctive relief. These impacts are irretrievable. As amply described in Plaintiffs' Motion for Preliminary Injunction, consistent with *Crowe & Dunleavy PC*, the irreparable harm of litigating in a forum that has no jurisdiction warrants issuance of a preliminary injunction.

Additionally, Defendants seek, through the discovery process, production of the Plaintiffs' personal tax returns. Not only is this irrelevant to the issue at bar, but it is an irreversible invasion of Plaintiffs' privacy and confidentiality. If jurisdiction proceeds in Tribal Court, and a requirement of these disclosures is ordered, Plaintiffs will be with absolutely no recourse to address this highly sensitive issue.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

### D. Exhaustion is Not Required Under the Second *Montana* Exception Where it is "Plain" that the Tribal Court Lacks Jurisdiction.

Under Defendants' approach, any case involve an Indian tribe and a non-Indian would be subject to the exhaustion requirement if tribal jurisdiction is disputed (e.g. "The only way it is 'plain' or evident that a tribal court lacks jurisdiction is if that determination is made under applicable federal law, but that issue is precisely what the exhaustion doctrine intended to leave, in the first instance, for tribal courts to decide.")  In fact, *Hicks* and the cases that follow it hold the opposite – a federal court clearly has the authority to make a determination that exhaustion is not required when it is "plain" or "evident" that the tribal court lacks jurisdiction.  *Crowe & Dunlevy PC*, 640 F.3d at 1153.  *Strate* did not limit the exhaustion exception to just auto accident cases – the *Montana* rule remains intact, and that rule states that tribal court jurisdiction under the second *Montana* exception cannot be found unless the non-member's activity or conduct is so severe and immediate that it "undermines" the tribe's "sovereignty or welfare."

In an effort to create the appearance of impact on Tribal sovereignty and welfare, Defendants have filed declarations asserting a variety of vague and misleading references to environmental issues on the Fort Hall Reservation and suggest that somehow the residential construction project is connected to those issues.  It is Defendants' burden to show – through concrete and properly supported documents and testimony – that the conduct at issue (and not some unidentified and unrelated conduct of a third party – will actually cause harm to the Tribes' sovereignty or welfare.  They have failed to do so.

First, the description of Mr. Evans' house construction as "unregulated" is false and misleading. Response at 15. Mr. Evans and his contractors have obtained Power County permits. Evans Affidavit, ¶4.  Power County's Planning Department ensured that the construction project

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

adhered to the International Building Code and conducted inspections.  Affidavit of Robert Steinlicht, ¶¶2-3.  Information regarding the permits, house plans, construction inspections, etc. are available at the Power County Planning Department, however no Tribal official has asked to inspect those records. Affidavit of Robert Steinlicht, ¶¶4-5.  Defendants' misleading speculation that septic system issues, well installation, construction debris disposal and other construction-related concerns ignores the point.  This Court should not deny relief to allow the Defendants to go on a fishing expedition in the tribal forum in search of some scrap of evidence of harm in support of tribal jurisdiction.  That is not the purpose of the exhaustion requirement.  Exhaustion means deferring to tribal forums when there is a reasonable basis for doing so.  Defendants have none.

Second, as Defendants acknowledge, construction of Mr. Evans' home is now complete. Response at 21.  The only "conduct" that could potentially impact Tribal interests is the act of Mr. Evans and his family residing in their home on fee land, which is accessible via County-maintained road in an area predominated by non-Indian residents and the municipally-owned Pocatello Airport.  Evans Affidavit, ¶ 2.   It strains reason to suggest that a family residence poses an ongoing impact to Tribal health and welfare.

Defendants also fail to make a distinction between Tribally-owned lands, where exhaustion is much more likely to be required and fee lands, where it is not.  *Elliot v. White Mountain Apache Tribal Court*, 566 F.3d 842 (9th Cir. 2009), also cited by Defendants, perhaps best exemplifies this point.  Exhaustion was required there due to the <u>actual</u> trespass on Tribal lands loss of millions of dollars of Tribally-owned timber and other natural resources. *Id.* at 849-50.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

By way of contrast to the *Elliott* case, Defendants here offer nothing more than speculation, unfounded allegations of potential harm due to unspecified "proximity" to Tribal hunting and fishing areas, and multiple references to vague, irrelevant instances involving unnamed third parties regarding dumping of construction debris and fire hazards.  Response at 14-16.  As discussed in Plaintiffs' Motion to Strike, Defendants' declarations are inadmissible and should not be considered due to the lack of personal knowledge, evidentiary foundation, and the failure to attach cited documents as required by Rule 56(e).  Even if considered, however, where it is "plain" that no consensual relationship exists, no tribal land is impacted, and Plaintiffs' actions present no direct or even indirect impact on the Tribal government or population, under U.S. Supreme Court precedent, exhaustion would serve no purpose other than delay and should be denied.

DATED this 29th day of November, 2012.

MAY, RAMMELL & THOMPSON, CHTD.


By_____/s/_____
     Aaron N. Thompson, ISB No. 6235
     *Attorney for Plaintiffs*

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION